IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RODOLFO GAONA,

     Petitioner,

     v.

STATE OF KANSAS,

     Respondent.

Case No. 5:19-cv-03262-HLT

## MEMORANDUM AND ORDER

Petitioner Rodolfo Gaona ("Gaona"), a prisoner in the custody of the State of Kansas, brings this petition for federal habeas corpus relief under 28 U.S.C. § 2254.[1] Doc. 1. Because the stated grounds are unexhausted, procedurally defaulted, or not meritorious, the Court dismisses in part and denies in part Gaona's petition and declines to issue a certificate of appealability.

## I.    BACKGROUND

**The Charges:** Gaona was charged with three counts of rape in violation of K.S.A. 21-3502(a)(2) and four counts of aggravated criminal sodomy in violation of K.S.A. 21-3506(a)(1).[2] All seven counts involved Gaona's stepdaughter, M.L.

**The Trial:** During trial, the State called M.L.'s mother, R.G., as its first witness. R.G. testified that she married Gaona and that she, Gaona, M.L., and her son lived together. R.G. further

---

[1] Because Gaona proceeds pro se, his pleadings are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court does not, however, assume the role of advocate. *Id.*

[2] Count One alleged rape on or about December 20, 2005. Count Two alleged aggravated criminal sodomy on or about December 20, 2005. Count Three alleged rape on or about December 19, 2005. Count Four alleged aggravated criminal sodomy on or about December 19, 2005. Count Five alleged rape on or about September 1, 2005 through September 30, 2005. Count Six alleged aggravated criminal sodomy on or about September 1, 2005 through September 30, 2005. And Count Seven alleged aggravated criminal sodomy on or about March 23, 2005 through December 19, 2005.

testified that M.L. was 11 years old and that she had been diagnosed with Attention Deficit Hyperactivity Disorder. R.G. worked second shift, and Gaona would watch the children while she was at work. M.L. typically arrived home from school before her brother, and Gaona arrived home from work between 5:30 p.m. and 6:30 p.m.

R.G. testified that the morning of December 21, 2005, she, her son, and M.L. went shopping after she and Gaona had an argument. During the outing, her son told her that Gaona and M.L. had a "sick game." When R.G. asked M.L. what he was talking about, M.L. started crying and "told me that she couldn't tell me because something bad would happen to me." After M.L. calmed down, R.G. asked M.L. questions "to be sure that there was actually a crime before I did anything about it," including asking whether Gaona put his penis in M.L.'s vagina. Later, once R.G. had taken M.L. to the police station, M.L. talked to Detective Jeff Steele and investigator Nikki Wiecken. M.L. then was taken to the hospital for a sexual abuse evaluation by a Sexual Assault Nurse Examiner ("SANE"). After the SANE evaluation, M.L. was interviewed by Wiecken with a social worker present.

R.G. also testified that M.L. told her that the encounters with Gaona caused M.L. to bleed, but R.G. never found blood on M.L.'s clothes, bedding, or the toilet. R.G. testified that M.L. had mentioned having pain while going to the bathroom but was never seen by a doctor for this complaint. R.G. also testified that M.L. told her that M.L. had seen a pornographic movie with Gaona and that Gaona had threatened her.

R.G. was questioned about other adult males with whom M.L. had been in contact and said that the only other such males were friends and neighbors. R.G. was also questioned about her relationship with Gaona. She testified that she and Gaona had disagreements, a few of which were loud and some of which occurred in front of the children. R.G. did not recall ever asking Gaona

2

for a divorce, but Gaona had told her several times that she could leave him. Although R.G. remained married to Gaona at the time of his trial, she testified that she could not afford to get a divorce and that she and the children had not had contact with Gaona since M.L.'s allegations came to light.

M.L.'s brother, age 9, testified at trial that he could not remember what M.L. told their mom while shopping. He said that he had seen Gaona and M.L. in Gaona's bedroom, with M.L. lying on the bed and Gaona standing in front of the bed. M.L.'s brother said that Gaona was doing "[s]omething to my sister," which he called "[p]laying a nasty game with her." At trial, M.L.'s brother said that he saw the "nasty game" more than once, but he could not remember how many times. Before trial, he had told a police officer that he saw it one time, but he had told his mother that he saw it more than once.

M.L.'s brother further testified that "my sister didn't seem that she liked" the "nasty game." But he also said that he did not see Gaona touch M.L. and that both Gaona and M.L. had their clothes on each time he saw them. He said he never talked to M.L. about what he had seen, and Gaona had told him not to tell his mother. He did not tell his mother until the shopping excursion because he was afraid Gaona would hurt his mother.

M.L.'s brother also testified that he sometimes heard his mother and Gaona arguing but "not very much" and that it bothered him "a little bit." He said that he only "kind of" liked Gaona as a stepfather and wanted to get rid of him "[a] little bit."

M.L. testified at trial that she talked to her mother after her brother told her mom "what [Gaona] did." She described going to the police station, telling a police officer what happened, and then seeing a nurse for an examination and telling the nurse what happened. M.L. said that she had to go to the nurse because Gaona "was doing something real bad." When asked what that meant,

M.L. first said "I don't want to say it," but then explained that it meant Gaona "was making me have sex with him."

M.L. testified that she referred to her private parts as her "yaya" and to a boy's private parts as a "doinkey." She stated that Gaona had touched her yaya. She said she "forgot" whether Gaona's doinkey touched her yaya, but she testified that his doinkey touched her "butt." M.L. told the nurse that her yaya got sore and explained that it was caused by "[t]he doinkey." She further testified that Gaona put his doinkey in her mouth, and she told him to quit. She also testified Gaona touched her butt with his finger, but she "forgot" if it went inside. M.L. first answered "[n]o, no," when asked if Gaona put his finger in her yaya, but then said that he did. She stated that she did not know how many times Gaona had touched her but that it was more than once. M.L. had previously testified that the last time Gaona touched her she had her eyes closed and did not see which part of his body touched her.

M.L. also testified that she and Gaona had watched a movie with naked people in it one time. She said that the touching that Gaona did to her was also what had happened in the movie. M.L. testified that she did not know the dates on which the touching occurred, but they happened when her brother was asleep or at a friend's house and her mom was at work. M.L. initially stated that the time her brother saw her and Gaona when she was on the bed, she and Gaona both had their clothes on and were not touching. She later testified, however, that her brother saw them more than once and that she did not know if they were clothed each time. M.L. said that Gaona had told her not to reveal what happened and said he would shoot her family if she did.

M.L. also testified that she did not like Gaona as a stepfather and that she wanted to get rid of him. She thought he was unfair when he punished her, and she did not like it when he argued with her mother, which happened often.

Pam Washburn, a SANE, testified about her examination of M.L., including M.L.'s description of what had occurred. M.L. told Washburn that her stepfather was having sex with her and showing her sex movies. Washburn testified that M.L. said, "He put his thing up my butt and, um, he tried to have sex with me"; "[t]hat's what he always does"; and "[t]hat's what he always does, puts his doinkey in my yaya." M.L. also reported that she sometimes bled when she went to the bathroom. Washburn further testified that M.L. told her that M.L. and Gaona watched a sex movie on December 20, 2005, and that, on December 19, 2005, Gaona "tried to have sex with [her]."

Washburn testified that she had found an "irregular margin" on M.L.'s hymen, an "abnormal finding" for a pediatric patient and one consistent with sexual abuse. She observed no abnormal findings in M.L.'s anal area, but she testified that "injury to the anal area is extremely rare." Washburn saw no physical evidence of acute trauma during her exam of M.L.

Wiecken was the investigator who interviewed M.L. on the day the crimes were reported and again the day after. Wiecken testified that she had special training in interviewing children but did not have a college degree. Wiecken completed a "Finding Words" program covering a particular interview protocol to be used when there were allegations of child sexual abuse. By the time of Gaona's trial, Wiecken had completed approximately 30 forensic interviews of children, 20 of which were before her interview of M.L. About half a dozen of the children were around M.L.'s age.

Wiecken testified that she attempted to get "sensory type details" from the children she interviewed because "these aren't things that a child can really be coached on." Part of the Finding Words protocol calls for "exploring the alternative hypothesis," and Wiecken said that she and M.L. discussed other people in the home. M.L. denied that anyone else had touched her in the way

Gaona had touched her. Wiecken did not ask M.L. specifically if she had been around other adults on December 19 and December 20, 2005. Wiecken testified that she used dolls and anatomical drawings during her interviews with M.L., who "was having a hard time talking about what happened to her." M.L. did talk about "sex movies" and disclosed the date of her last contact with Gaona. Wiecken's interviews of M.L. were videorecorded and the recordings were admitted into evidence and played to the jury.

Wiecken also interviewed M.L.'s brother twice but only recorded the second interview. Using dolls, M.L.'s brother told Wiecken that he had seen M.L. on the bed and Gaona standing by the bed and demonstrated with the doll a motion "described as a humping or [what] one might see in sexual acts." M.L.'s brother told Wiecken this incident occurred before Halloween and said he witnessed it when he got off the bus from school and came inside the house. Wiecken did not ask him why he had not told his mother what he saw, but he told her "he was scared that something bad was going to happen." He told Wiecken that he saw this happen only once, but R.G. called later in the day of her son's interview and said that he told her that he had seen it more than once.

An evidence technician and two investigators, all with the Finney County Sheriff's Office, testified that pornographic movies were among the evidence collected from Gaona's home.

The State called Kelly Robbins, the executive director and co-founder of the Western Kansas Child Advocacy Center and the Executive Director of Finding Words of Kansas, to testify as an expert witness. Robbins was not a licensed mental health professional. She previously worked for the Kansas Bureau of Investigation as a forensic scientist and as a Special Agent conducting criminal investigations, including investigations of child sex abuse cases in which she interviewed child victims, but she had no formal training in psychology, psychiatry, social work, or child development.

Robbins testified that forensic interviews of children who allege sexual abuse follow "a semi-structured protocol that allows for the child to tell in their own words what happened." Robbins received training in the Finding Words protocol and was certified to conduct forensic interviews using the protocol by the American Prosecutors Research Institute. She testified that the protocol is supported by more than 150 "research articles."

In response to the State's question regarding patterns and dynamics present in children of sexual abuse, Robbins stated that "one of the main things is that there's secrecy around child abuse . . . especially child sexual abuse." According to Robbins, secrecy and fear often lead children not to disclose such abuse the first time it occurs. This phenomenon of "delayed disclosure" can extend "anywhere from weeks, it could be years, it may be that they never tell." Robbins further testified that children display "a variety of reactions of what they do to survive this abuse." When a child first discloses abuse, the disclosure is often a "tentative disclosure" in which the child will "only feel comfortable about giving some of the information," adding more information later. Robbins further testified that "the majority of the children . . . care for their abusers" and that it is harder for a child to report abuse if it occurs in the child's home or is perpetrated by a family member.

Robbins opined that it was difficult to coach a child into alleging nonexistent sexual abuse, stating that such a practice was "probably rare" and would "take[ ] a lot of effort and time." Like Wiecken, Robbins stressed the importance of trying to get children to share "sensory details" of their experiences.

The defense presented three witnesses at trial. Clinical psychologist Robert Barnett testified as an expert on flaws in the Finding Words interview protocol and Wiecken's interviews of M.L. and her brother. Barnett, who said he had conducted 100 to 200 sexual abuse interviews

of children, also criticized what he saw as Washburn's confirmatory bias in the medical history she took from M.L. at the time of the sexual abuse physical exam.

A manager at Gaona's place of employment testified that Gaona did not work in 2005 on December 1, 9, 10, 11, 19, or 27, and normally worked from 6 a.m. to 5 p.m.

Gaona testified that he had problems with his prostate, which meant he had difficulty achieving an erection "most of the time," starting five months before his arrest on December 21, 2005. Gaona said he had begun seeing a doctor for these problems three months before his arrest. Gaona further testified that his wife, R.G., was aware of his problem because "sometimes" he could not have sex with her (R.G. had previously testified that Gaona had told her about having a prostate problem). Gaona also testified that he and his wife discussed divorce the day before his arrest, and he denied M.L.'s sexual abuse allegations.

**Procedural Posture:** On December 8, 2006, the jury convicted Gaona of two counts of rape and of two counts of aggravated criminal sodomy. Gaona was sentenced to 330 months imprisonment. On direct appeal, the Kansas Court of Appeals ("KCOA") reversed one count of rape because the trial court erred in not including the jury instruction for the lesser-included offense of attempted rape. *State v. Gaona*, 208 P.3d 308, 313 (2009). Gaona appealed his remaining challenges to the Kansas Supreme Court ("KSC"), which considered the following seven issues:

1. Was it error to allow the executive director of Finding Words of Kansas to testify as an expert about the behavior of child victims of sexual abuse?

2. Did the district judge err by failing to give a lesser included instruction on attempted aggravated criminal sodomy?

3. Was it error to exclude Gaona's medical records?

4. Was it error to admit evidence that Gaona showed M.L. pornographic movies without an analysis of the evidence under K.S.A. 60-455?

> 5. Was it error to admit evidence of M.L.'s prior consistent statements before her own live testimony was given at trial?
>
> 6. Does cumulative error require reversal of Gaona's convictions?
>
> 7. Is Gaona entitled to vacation of his remaining sentence and remand for resentencing because he was given the highest term in the applicable Kansas Sentencing Guidelines Act grid box, without proof of any aggravating factor to a jury beyond a reasonable doubt?

*State v. Gaona*, 270 P.3d 1165, 1169 (Kan. 2012). On March 2, 2012, the KSC affirmed finding no additional error. *Id.*

On February 22, 2013, Gaona filed a petition for post-conviction relief under K.S.A. § 60-1507, raising ineffective assistance of trial counsel and prosecutorial misconduct. The district court found that Gaona was not entitled to relief. The KCOA affirmed. *Gaona v. State*, 388 P.3d 950 (Kan. Ct. App. 2017). The KSC denied review on July 25, 2017. On April 5, 2019, the KCOA affirmed the denial of Gaona's second habeas petition as not ripe, untimely, and successive. *Gaona v. State*, 437 P.3d 1034 (Kan. Ct. App. 2019). The KSC denied review on December 13, 2019.

On December 23, 2019, Gaona filed a federal petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his state-court conviction on multiple grounds. Doc. 1.[3] His petition is 135 pages.

## II.   STANDARD

Gaona's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under the AEDPA, a petitioner must timely bring a petition and must have exhausted his federal claims in state court. 28 U.S.C. §§ 2244(d)(1), 2254(b)(1)(A). If those prerequisites are

---

[3]   This case was transferred to the undersigned in June 2021.

satisfied, then the standard of review hinges on the treatment of the claim by the state court. *McCracken v. Gibson*, 268 F.3d 970, 975 (10th Cir. 2001).

If the state court denies a federal claim based on a separate state procedural deficiency, the federal court does not reach the merits of the claim at all unless (1) the state ground for the decision was not adequate and independent of federal law or (2) the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice. *Id.* at 976.

If the state court did not reach the merits of a federal claim and review is not barred by an adequate and independent state procedural disposition, the federal court reviews the claim on the merits. *Id.* at 975.

Finally, if a state court denies a federal claim on the merits, the federal court may grant relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see also McCracken*, 268 F.3d at 975.

## III.   ANALYSIS

Gaona's grounds for relief come in three batches: his direct appeal claims (A-G), his first state habeas petition claims raising ineffective assistance of counsel and prosecutorial misconduct (H-K), and his second state habeas petition claims raising ineffective assistance, prosecutorial misconduct, and jury instruction error (L-M). The Court analyzes each claim.

### A.   Admission of Expert Testimony

In his first ground, Gaona argues that the trial court erred by permitting Robbins to testify as an expert witness about the behavior of child victims of sexual abuse. He argues that her testimony permitted the jury to discount both any inconsistencies or lack of detail in M.L.'s

testimony and the possibility that she was coached. Gaona raised this argument before the KSC on direct appeal, and it rejected his argument on the merits. *Gaona*, 270 P.3d at 1172-78.

Evidentiary challenges, such as this one, raising questions of state law, are cognizable for habeas relief only if the alleged error was "so grossly prejudicial [that it] fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Revilla v. Gibson*, 283 F.3d 1203, 1212 (10th Cir. 2002) (quoting *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000)). The Court may disregard an error unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Williamson v. Parker*, 705 F. App'x 677, 681 (10th Cir. 2017) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). "A substantial and injurious effect exists if a court finds itself in grave doubt about the effect of the error on the jury's [sentencing decision]." *Id.* (alteration in original) (quoting *Lockett v. Trammel*, 711 F.3d 1218, 1232 (10th Cir. 2013)).

Here, the KSC held that Robbins was neither qualified to testify on the characteristics of victims of child sexual abuse, particularly the phenomenon of delayed disclosure, nor offer her opinion that coaching to produce false allegations would be difficult and was "probably rare." *Gaona*, 270 P.3d at 1177. Nevertheless, the KSC found the error harmless because "there [wa]s no reasonable probability that the error affected the outcome of the trial." *Id.* at 1173. The KSC reasoned:

> M.L.'s allegations against Gaona were not merely corroborated by her repetition of them to various listeners. They were corroborated by her brother's observations and unprompted disclosure. They were corroborated in part by the SANE physical observation. They were at least marginally corroborated by the testimony of the sheriff's employees who found the pornographic videotapes.

*Id.* at 1178.

The Court agrees that the that admission of the testimony did not have a substantial and injurious effect. Therefore, admission of the testimony was not fundamentally unfair, and the Court denies this claim.

### B.      Denial of a Jury Instruction on the Lesser Included Offense of Attempted Rape

In his second ground, Gaona argues that the trial court violated his due process rights when it denied his request for a jury instruction on the lesser included offense of attempted rape on one of the rape counts. Gaona raised this argument on direct appeal, and the KCOA agreed with him and reversed and remanded on Count Three. *Gaona*, 208 P.3d at 313, *aff'd,* 270 P.3d 1165. This Court can provide no additional relief. Accordingly, it dismisses this claim as moot.

### C.      Failure to Instruct the Jury on the Lesser Included Offense of Attempted Aggravated Criminal Sodomy

In his third ground, Gaona argues that it was clearly erroneous for the trial court not to give jury instructions on the lesser included offense of attempted aggravated criminal sodomy even though his counsel never requested these instructions. Gaona contends that the trial court's failure to give the instructions violated his due process rights. Gaona challenged the failure to give the instructions before the KSC on direct appeal, and it rejected his argument on the merits. *Gaona*, 270 P.3d at 1178-79.

Although Gaona had potential recourse under Kansas law, there is no federal constitutional right to a lesser included offense instruction in non-capital cases. *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). Rather, this Court is bound to a rule of "automatic non-reviewability" for a state court's failure to give a lesser included offense instruction in a non-capital case. *Id.* Accordingly, the Court dismisses this claim.

### D.      Exclusion of Medical Records

In his fourth ground, Gaona argues that the district court violated his right to present a defense by excluding medical records about his erectile dysfunction. The trial court excluded these records because Gaona failed to produce them during discovery. But Gaona argues that the State would not have been prejudiced because it had already introduced evidence of his condition in its case-in-chief.

Gaona raised this argument before the KSC, and it rejected his argument on the merits. *Gaona*, 270 P.3d at 1179-80. Thus, this Court must determine whether the KSC's decision on this issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see also McCracken*, 268 F.3d at 975. After review, the Court finds the KSC's decision was neither contrary to or an unreasonable application of clearly established federal law nor based on an unreasonable determination of the evidence. Thus, the Court denies this claim.

To determine whether the trial court's exclusion of the proffered evidence violated a defendant's right to present a defense, (1) the evidence must be relevant; (2) the defendant's interest in admittance must outweigh the state's interest in exclusion; and (3) the evidence must be material, such that its exclusion might have affected the trial's outcome. *See United States v. Solomon*, 399 F.3d 1231, 1239 (10th Cir. 2005); *Richmond v. Embry*, 122 F.3d 866, 872 (10th Cir. 1997).

Here, the KSC recounted the facts as follows. The parties each requested discovery from the other well before trial. *Gaona*, 270 P.3d at 1180. The State's request under K.S.A. § 22-3212

specifically sought any "medical records . . . which the Defendant intends to produce at trial." *Id.* Nevertheless, Gaona produced no medical records to the State until approximately two hours before he sought to introduce the medical records at trial. *Id.* The State objected. Gaona's counsel, who sought to admit the records with no supporting foundation or medical testimony, said he had not produced the records earlier because he had not yet made a final decision on whether to seek their admission. *Id.* The trial judge excluded the records. *Id.* Thus, the evidence at trial on Gaona's prostate problem and related erectile dysfunction was limited to his testimony and his wife's confirmation of her awareness of the issue. *Id.*

The KSC affirmed the trial court. *Id.* It acknowledged the constitutional right to a fair trial but observed that the right is subject to the rules of evidence. *Id.* It found that Gaona failed to lay a foundation for the records; Gaona failed to demonstrate the relevance of many of the records; the contents of the records constituted inadmissible hearsay for which Gaona failed to assert an applicable exception; and the sanctions available to the trial judge for Gaona's violation of reciprocal discovery included exclusion. *Id.* The KSC further found that Gaona's right to present a defense was not implicated because he was free to present his own testimony about his prostate problem with corroboration from his wife. *Id.* Therefore, the KSC concluded, any error was harmless. *Id.*

This Court finds that in addition to the other evidentiary issues, Kansas had a particular interest in the prosecution receiving the records earlier than two hours before they were offered, "to assure both fairness and reliability in the ascertainment of guilt and innocence." *Solomon*, 399 F.3d at 1239. Additionally, Gaona does not demonstrate that exclusion of the records might have affected the trial's outcome. As the KSC found, Gaona was still able to introduce evidence of his prostate problem and erectile dysfunction. Notably, Gaona testified that he can sometimes keep an

erection. The Court finds that the KSC reasonably applied federal law in this case and its conclusion was not based on an unreasonable determination of the facts. The Court denies this claim.

### E.   Admission of Evidence that Gaona Showed M.L. Pornographic Movies and Admission of M.L.'s Prior Consistent Statements

Gaona's fifth and sixth grounds are that the trial court erred by admitting evidence that he showed M.L. pornographic movies as propensity evidence and by admitting M.L.'s prior consistent statements before she was impeached or even testified. He raised these arguments before the KSC in his direct appeal. But the Court is precluded from reviewing Gaona's claims because he procedurally defaulted them in state court.

In the habeas context, a federal court may not consider issues "that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." *McCracken*, 268 F.3d at 976 (citation omitted). To be independent, the state procedural ground must rely "on state law, rather than federal law, as the basis for decision." *Id.* (citation omitted). To be adequate, the state procedural ground "must have been firmly established and regularly followed when the purported default occurred." *Id.* (citation omitted).

Here, Gaona raised these claims before the KSC in his direct appeal. But the KSC declined to reach the merits because Gaona failed to contemporaneously object to the evidence at trial thereby preserving the issues for appeal. *Gaona*, 270 P.3d at 1181. This Court is likewise precluded from reviewing Gaona's claims regarding the admission of evidence that he showed M.L. pornographic movies and the admission of M.L.'s prior consistent statements. The KSC's ruling was based exclusively on Kansas's contemporaneous objection rule, which was previously recognized by the KSC. *See State v. King*, 204 P.3d 585, 592 (2009) (noting that the

contemporaneous-objection rule codified in K.S.A. § 60-404 requires timely, specific objection to evidence at trial to preserve issues arising from admission). This rule is an independent and adequate state ground that precludes federal habeas review, unless Gaona demonstrates cause and prejudice or a fundamental miscarriage of justice. *McCracken*, 268 F.3d at 976.

Gaona does neither. For cause, he argues that his counsel failed to object at trial, alluding to ineffective assistance of counsel. As the Court finds below, trial counsel was not ineffective for failing to object to the pornography evidence. *See* H.1., *infra*. Gaona failed to exhaust his ineffective assistance argument concerning M.L.'s prior consistent statements. *See Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014) (explaining that a federal court cannot grant a habeas petition unless the petitioner exhausted his claims in state court and referring to such unexhausted claims that would be procedurally defaulted as an "anticipatory procedural bar"). Gaona also fails to produce reliable evidence to show actual innocence. Accordingly, the Court is precluded from reviewing these claims.[4]

### F.    Cumulative Error

Gaona's seventh ground is that the cumulative effect of the previously alleged errors denied him a fair trial. He raised this argument before the KSC in his direct appeal, and it rejected his argument on the merits. *Gaona*, 270 P.3d at 1182. Because the Court finds that the KSC's decision was neither contrary to or an unreasonable application of clearly established law nor based on an

---

[4]    Additionally, Gaona only raises state evidentiary arguments. As discussed above, evidentiary challenges, such as this one, raising questions of state law, are cognizable for habeas relief only if the alleged error was "so grossly prejudicial [that it] fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Revilla*, 283 F.3d at 1212. The Court cannot say that admission of the pornography evidence and M.L.'s prior consistent statements fatally infected the trial violating fundamental fairness. *See Watkins v. Chapman*, 2020 WL 8472483, at *1 (6th Cir. 2020) (finding a trial was not rendered fundamentally unfair by the admission of gang photos and finding that there is no clearly established Supreme Court precedent creating a constitutional limitation on the admission of prior consistent statements). The Court notes that trial counsel argued in closing that almost the entire case was based on M.L.'s testimony and discussed at length how her testimony was influenced.

unreasonable determination of the evidence, the Court denies this claim. 28 U.S.C. § 2254(d)(1)-(2); *see also McCracken*, 268 F.3d at 975.

"In the federal habeas context, a cumulative-error analysis aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Cuesta-Rodriguez v. Carpenter*, 916 F.3d 885, 915 (10th Cir. 2019) (citation omitted). This analysis "applies where there are two or more actual errors. It does not apply, however, to the cumulative effect of non-errors." *Id.* (citation omitted). Further, "in a cumulative error analysis, a court . . . may not consider claims that are procedurally defaulted." *Id.* (citation omitted and ellipsis in original). To obtain relief, a petitioner must show that "the cumulative effect of the errors determined to be harmless had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* (citation omitted).

Here, the KSC noted that the harm from not instructing on the lesser-included offense of attempted rape was already being corrected and that the only other error was the admission of portions of Robbins's expert testimony. Therefore, there were not enough errors to accumulate. The Court finds that the KSC reasonably applied federal law and denies this claim.

## G.    Aggravated Sentence

Gaona's eighth ground is that the Kansas sentencing scheme violated his Sixth and Fourteenth Amendment rights, citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Cunningham v. California*, 549 U.S. 270 (2007). Gaona raised this argument before the KSC, and it rejected his argument on the merits. *Gaona*, 270 P.3d at 1182. Because the Court finds that the KSC's decision was neither contrary to or an unreasonable application of clearly established law nor based on an unreasonable determination of the evidence, the Court denies this claim. 28 U.S.C. § 2254(d)(1)-(2); *see also McCracken*, 268 F.3d at 975.

*Apprendi* held that "the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant." *Cunningham*, 549 U.S. at 274 (citing *Apprendi*, 530 U.S. 466). *Cunningham* applied *Apprendi* in striking down a California sentencing scheme under which there were three precise terms of imprisonment—a lower, middle, and upper term sentence. *Id.* at 277. The sentencing scheme further provided that "the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime," which the sentencing judge needed to find by a preponderance of the evidence and state on the record. *Id.* at 277-78 (citation omitted). Because the system only permitted imposition of the upper sentence upon findings of aggravation and the judge was required the make the findings, it violated *Apprendi*. *Id.* at 293. The Court noted that "[m]erely advisory provisions, recommending but not requiring the selection of particular sentences in response to differing sets of facts . . . would not implicate the Sixth Amendment." *Id.* at 291 (internal quotations omitted).

Here, Kansas had a similar triad sentencing scheme consisting of shorter, middle, and longer sentencing options. The statute further provided:

> The sentencing court has discretion to sentence at any place within the sentencing range. The sentencing judge shall select the center of the range in the usual case and reserve the upper and lower limits for aggravating and mitigating factors insufficient to warrant a departure.

K.S.A. § 21-4704(e)(1). The trial court gave Gaona the longer sentence without submission of aggravating factors to the jury. In finding that the trial court did not violate *Apprendi*, the KSC relied on *State v. Johnson*, 190 P.3d 207, 223 (Kan. 2008). *Johnson* reasoned that the first sentence of K.S.A. § 21-4704(e)(1) grants the sentencing court discretion to sentence a defendant to the

longer sentence and that the second sentence merely recommends the middle sentence in the absence of aggravating or mitigating factors. *Id.* at 225. Accordingly, a sentence to the upper term would not increase the "statutory maximum," requiring jury findings of aggravating factors. *Id.*

Courts from this district have affirmed *Johnson* on multiple occasions. *See Gaines v. Heimgartner*, 2017 WL 4758929, *6 (D. Kan. 2017); *Harms v. Cline*, 27 F.Supp.3d 1173, 1183-84 (D. Kan. 2014); *Hopper v. Cline*, 2011 WL 6372960, at *4-8 (D. Kan. 2011); *see also United State v. Smith*, 371 F. App'x 901, 904 n.1 (10th Cir. 2010) (finding that *Cunningham* does not affect judicial fact-finding inside the statutory range). The Court joins them in finding that the KSC in *Johnson* reasonably applied *Apprendi* and *Cunningham* in finding the Kansas sentencing scheme constitutional. Thus, the Court finds that the KSC's decision was neither contrary to or an unreasonable application of clearly established law nor based on an unreasonable determination of the evidence. The Court denies this claim.

## H.    Ineffective Assistance of Trial Counsel

Gaona's ninth ground is that his trial counsel was constitutionally ineffective because he: (1) failed to object to the admission of evidence that he possessed a shotgun and that he showed M.L. pornography, (2) failed to follow the discovery rules, (3) failed to secure an expert on erectile dysfunction, (4) failed to secure an expert on recessed hymens, (5) failed to object to prosecutorial misconduct, (6) failed to object to the State's violation of a motion in limine, (7) failed to object to portions of taped interviews, (8) failed to properly cross-examine the State's witnesses, and (9) had a conflict of interest. Gaona raised these claims in his first state habeas petition and, for the most part, the KCOA denied them on the merits. Thus, this Court applies AEDPA deference to those claims. *See* 28 U.S.C. § 2254(d)(1)-(2); *see also McCracken*, 268 F.3d at 975. After review, the Court denies this ground.

Specifically, the KCOA applied a standard that conforms to federal law. The KCOA noted that to prove ineffective assistance of counsel, the petitioner must show (1) deficient performance, and (2) prejudice. *Gaona*, 388 P.3d 950, at *3. This is consistent with federal law. *See Strickland v. Washington*, 466 U.S. 668 (1984) (outlining two-part test that requires performance below an objective standard of reasonableness and prejudice as a result). The Court considers the KCOA's application of *Strickland* for each claim below.

### 1. Failure to Object to Admission of Shotgun and Pornography Evidence

Gaona argues that his counsel was ineffective by failing to object on "prior bad acts" and relevancy grounds to the admission of shotguns owned by Gaona, testimony about his showing pornographic videos to M.L., and the covers of those pornographic videos.

The KCOA held that the evidence did not qualify as prior bad acts under Kansas law. *Gaona*, 2017 WL 544626, at *3-4. The KCOA also held that the shotgun evidence was relevant because M.L.'s explanation of her delayed disclosure of the sexual abuse was that Gaona had threatened to shoot her and her family if she told anyone. *Id.* at *5. Finally, the KCOA found that the pornography evidence was relevant because M.L. testified that she was accosted at least once while Gaona watched pornography and it explained how M.L. had sexual knowledge beyond her years. *Id.* Accordingly, the KCOA found that trial counsel was not ineffective for failing to object—essentially because objection would have been futile and drawn further attention to the evidence. *Id.* at *3-5.

This Court is bound by the KCOA's ruling on the admissibility of evidence under Kansas law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2006). The KCOA's finding that trial counsel was not ineffective because the evidence was not objectionable is a reasonable application of *Strickland*.

*See Martin v. Kaiser*, 907 F.2d 931, 936 (10th Cir. 1990) (holding that failure to raise meritless argument cannot constitute ineffective assistance of counsel).[5]

### 2.     Failure to Follow Discovery Rules

Gaona argues that trial counsel was ineffective by failing to follow the discovery rules that required him to timely provide the State with Gaona's medical records. The KCOA agreed with Gaona that counsel was deficient for failing to comply with the discovery rules. *Gaona*, 2017 WL 544626, at *5-6. Nevertheless, it found that Gaona could not demonstrate prejudice. *Id.* at *6. It reasoned that Gaona was permitted to testify to his erectile dysfunction and that his wife corroborated his testimony. It noted that Gaona testified that he could maintain an erection on occasion. *Id.* And medical records would not have added to what Gaona presented in his defense. *Id.* This Court finds that the KCOA conducted a reasonable application of *Strickland* in finding no reasonable probability that the outcome of the case would have been different.

### 3.     Failure to Secure or Consult with an Expert on Erectile Dysfunction

Gaona argues that the trial counsel was ineffective by failing to secure or consult with an expert on erectile dysfunction. The KCOA rejected the claim reasoning that Gaona and his wife testified about his erectile dysfunction and that Gaona did not allege that an expert would have testified to anything different. *Gaona*, 2017 WL 544626, at *6. The Court finds that the KCOA's application of *Strickland* was reasonable.

---

[5]   Gaona also argues that trial counsel filed a motion in limine to exclude evidence of prior crimes and other bad acts, but then counterproductively cross-examined R.G. and M.L. about the pornography evidence. The KCOA did not specifically address this argument, so the Court does not apply AEDPA deference. Nevertheless, as Gaona points out, the pornography itself was not illegal and the KCOA found that it did not qualify as a bad act, so the motion in limine did not apply. The pornography evidence was raised on direct examination. Trial counsel cross-examined R.G. eliciting that M.L. had not told her how many times she had seen pornography. When cross-examining M.L., trial counsel elicited that she had only seen it once. The Court finds no deficient performance.

### 4. Failure to Secure an Expert on Recessed Hymens and Effectively Cross-Examine

Gaona argues that trial counsel was ineffective for failing to secure an expert to review SANE Washburn's opinion to determine whether M.L.'s hymen was in fact recessed and the cause. He contends that it was clear his attorney knew nothing about recessed hymens and what can cause them to occur rendering him ineffective on cross examination.

The KCOA held that counsel was not ineffective. *Id.* It reasoned that Washburn testified that she observed irregular margins on M.L.'s hymen but that all other physical findings were negative. *Id.* On cross-examination, she testified that the irregular hymen could be caused by something other than sexual abuse. *Id.* Gaona did not explain what an expert could have added, and therefore the KCOA found that trial counsel's performance in declining to secure an expert was not objectively unreasonable. *Id.* The Court finds that the KCOA's application of *Strickland* was reasonable.[6]

### 5. Failure to Object to Prosecutorial Misconduct

Gaona raises several failures to object to prosecutorial misconduct. First, he argues that trial counsel should have objected to the State's vouching for M.L.'s credibility during closing. The prosecutor stated: "She knew that the semen came out of the tip of the doinkey was milky, like milk, that it was gushy and goopy and that it tasted nasty. Now, that's something you can't coach. That's something she knew. She could describe that." *Id.* at *7. Gaona explains that the lack of physical evidence made comments on M.L.'s credibility more prejudicial. The KCOA agreed with Gaona that the prosecutor's comment on M.L.'s credibility was error and that trial counsel was deficient for not objecting. *Id.* Nevertheless, it held that Gaona did not show prejudice.

---

[6] The KCOA seems to have missed part of Gaona's argument that his counsel was ineffective on cross-examination. But as the above discussion reflects, trial counsel effectively highlighted the limitations of Washburn's testimony.

*Id.* It observed that the prosecutor was responding to trial counsel's comments accusing M.L. of fabricating her stories to get rid of Gaona. The KCOA added that it was clear the jury meaningfully considered all the evidence because it found Gaona not guilty of three of the charges. *Id.* The Court finds that the KCOA's application of *Strickland* was reasonable. The Court adds that M.L.'s description was already on the record and that trial counsel's accusation that M.L. fabricated the sexual abuse mitigates the harm of the prosecutor's comments. *See Cuesta-Rodriguez*, 916 F.3d at 907-08 (noting that when a prosecutor responds to an attack by trial counsel, the court assesses the response in light of the attack).

Second, Gaona argues that trial counsel should have objected to the State's question in regard to M.L.'s hymen: "So the findings of the abnor—irregular margin, is that consistent with her history of sexual abuse?" and the Washburn's answer of "Yes." He contends that this question was improper because there was no history of sexual abuse. The KCOA found that failure to object was not ineffective. *Id.* It reasoned that the issue at trial was Gaona's alleged sexual abuse of M.L. and that it was a proper question. *Id.* The Court finds that the KCOA reasonably applied *Strickland*.

Third, Gaona again argues that trial counsel counter-productively filed a motion in limine to exclude evidence of other crimes or bad acts yet failed to object to testimony about Gaona's pornographic movies and even elicited testimony himself. The KCOA again found that the possession of pornography did not qualify as a crime or bad act. *Id.* Therefore, trial counsel was not ineffective for failing to object to the admission of evidence regarding the pornography and then cross-examining witnesses on the matter. *Id.* The Court finds that the KCOA reasonably applied *Strickland*, again adding that the State brought up the pornography.

6.      **Failure to Object to and Redact Portions of M.L.'s and Nikki Wiecken's Recorded Interviews**

Gaona argues that trial counsel was ineffective for failing to move to redact portions of M.L.'s and Wiecken's recorded interviews until after the jury had already seen the full interviews. The Court is precluded from reviewing Gaona's claim because he procedurally defaulted it in state court, and he does not demonstrate cause and prejudice or a fundamental miscarriage of justice. *See McCracken*, 268 F.3d at 976.

Gaona raised this claim before the KCOA in his state habeas petition. But the KCOA declined to reach the merits because Gaona had not sufficiently designated a record on appeal reflecting the mid-trial objection and did not describe exactly what information in the interviews was objectionable. *Id.* at *8. Based on the limited information presented, the KCOA could not find trial counsel ineffective. *Id.*

This Court is likewise precluded from reviewing Gaona's claim. The KCOA's ruling was based on Kansas's rule that an appellant designate a record on appeal sufficient to establish the claimed error. *See State v. Walters*, 159 P.3d 174, at *15 (2007); Kansas Supreme Court Rule 6.02(a)(4) ("The court may presume that a factual statement made without a reference to volume and page number has no support in the record on appeal."). This is an independent and adequate state ground that precludes federal habeas review unless Gaona demonstrates cause and prejudice or a fundamental miscarriage of justice. *McCracken*, 268 F.3d at 976. Gaona offers no explanation for why he failed to comply with the Kansas rules (and, even if he did, he does not demonstrate prejudice), and he likewise fails to produce reliable evidence to show actual innocence. Accordingly, the Court is precluded from reviewing this claim.[7]

---

[7]    Even if the Court overlooked the procedural bar and considered the claim on the merits, the Court is similarly unable to conduct a meaningful review because Gaona's current petition still does not describe what information in the taped interviews is objectionable.

### 7.      Failure to Properly Examine State's Witnesses

Gaona argues that trial counsel was ineffective in cross-examining K.B.I. forensic scientist James D. Newman and Washburn regarding the lack of DNA evidence found. The KCOA rejected his claim. It reasoned that examination of witnesses is typically a matter within the reasonable professional judgment of trial counsel. *Gaona*, 388 P.3d 950, at *8. Regardless, Newman testified that he often finds some type of forensic evidence in sexual assault cases and that here there was none. *Id.* The KCOA found that Washburn would not have had knowledge of what DNA evidence was found. *Id.* The KCOA reasonably applied *Strickland* in finding no deficient performance. *See Richie v. Mullin*, 417 F.3d 1117, 1124 (10th Cir. 2005) ("[C]ounsel's decisions regarding how best to cross-examine witnesses presumptively arises from sound trial strategy."). The Court also notes that trial counsel emphasized the lack of DNA evidence despite M.L. having not showered or changed undergarments since the last sexual assault.

### 8.      Conflict of Interest

Gaona's final ineffective assistance argument is that trial counsel had a conflict of interest based on trial counsel's accusation that Gaona was guilty and his insistence that Gaona take a plea for seven years imprisonment. Gaona continues that trial counsel in fact betrayed him citing the above ineffective assistance claims. He also highlights trial counsel's closing statement, which he labels as a concession of guilt: "This also has the lesser included crime of attempted rape. And thats [sic] where she talked about 'He tried to put it in me.' So at best youre [sic] looking at an attempt rather than an actual completed crime." Gaona also points out that counsel subpoenaed his employer, who testified that Gaona was not at work on the day of an alleged assault.

Gaona raised this argument before the KSC, and it rejected his argument on the merits. *Gaona*, 270 P.3d at 1182. The Tenth Circuit has found that "[a]n actual conflict can support an

ineffective assistance of counsel claim where the conflict prejudiced the defendant's representation." *United States v. Williamson*, 859 F.3d 843, 852 (10th Cir. 2017) (citing *Strickland*, 466 U.S. at 687-88).

Here, the KCOA applied an equivalent standard finding that to demonstrate a conflict of interest resulting in ineffective assistance, Gaona had the burden of proving "(1) the existence of an actual conflict of interest between attorney and client; and (2) that the established conflict adversely affected the adequacy of the attorney's representation." *Gaona*, 388 P.3d 950, at *8 (quoting *State v. Cheatham*, 292 P.3d 318 (2013)). The KCOA found that it was not objectively unreasonable for trial counsel to urge the plea bargain, which would have resulted in a fraction of the 27.5 years he received. The KCOA reasonably applied federal law in finding no ineffective assistance arising from a conflict of interest.

To the extent Gaona raises ineffective assistance based on the closing statement and the subpoena, the Court disagrees. Trial counsel's closing statement did not concede anything; he merely pointed out the basis for attempted rape verses rape and reiterated Gaona's position that nothing happened. Gaona's employer testified that, among other dates, Gaona did not work on December 19, 2005—the alleged date of two of the crimes. The Court is uncertain what purpose the manager's testimony served for the defense. But even if calling the manager was deficient performance, Gaona cannot show prejudice because the jury acquitted him of one of the December 19 charges and the KCOA reversed the other.

## I.    Cumulative Ineffective Assistance

Gaona's tenth ground is that the cumulative effect of his trial counsel's ineffective assistance prejudiced him. Gaona raised this argument before the KCOA, and it rejected his argument on the merits. *Gaona*, 270 P.3d at 1182. Because the Court finds that the KCOA's

decision was neither contrary to or an unreasonable application of clearly established law nor based on an unreasonable determination of the evidence, the Court denies this claim. 28 U.S.C. § 2254(d)(1)-(2); *see also McCracken*, 268 F.3d at 975.

As discussed above, "[i]n the federal habeas context, a cumulative-error analysis aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Cuesta-Rodriguez*, 916 F.3d at 915 (citation omitted). This analysis "applies where there are two or more actual errors. It does not apply, however, to the cumulative effect of non-errors." *Id.* (citation omitted). Further, "in a cumulative error analysis, a court . . . may not consider claims that are procedurally defaulted." *Id.* (citation omitted and ellipsis in original). To obtain relief, the petitioner must show that "the cumulative effect of the errors determined to be harmless had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* (citation omitted).

The KCOA articulated the standard that "[c]umulative trial errors, when considered collectively, may require reversal of the defendant's convictions when the totality of circumstances substantially prejudiced the defendant and denied the defendant a fair trial. If the evidence is overwhelming against the defendant, however, no prejudicial error may be found based upon this cumulative error rule." *Gaona*, 388 P.3d 950, at *9 (quoting *State v. Smith*, 293 P.3d 699 (2012)). The KCOA found that, although trial counsel erred by not properly disclosing Gaona's medical records and by failing to object to the State's rebuttal comments during closing, Gaona was not substantially prejudiced by the errors either individually or collectively. *Id.* For the above reasons discussing any prejudice and the weight of the evidence, the Court finds that the KCOA reasonably applied *Strickland*.

J.        **Prosecutorial Misconduct in Eliciting Improper Testimony**

Gaona's eleventh ground is that he was denied a fair trial by the prosecutor's misconduct in commenting on witness credibility and in eliciting prejudicial testimony. He quotes some comments and questions already addressed, *see* H.5, *supra*, and adds that the prosecutor excused M.L.'s lack of recollection of specific dates and exhorted the jury to remember its agreement during voir dire that DNA evidence is unnecessary to prove a rape case. The Court is precluded from reviewing Gaona's claim because he procedurally defaulted it in state court, and he does not demonstrate cause and prejudice or a fundamental miscarriage of justice. *See McCracken*, 268 F.3d at 976.

Gaona raised this claim before the KCOA in his state habeas petition. But the KCOA declined to reach the merits because prosecutorial error is a trial error and must be raised on direct appeal. *Gaona*, 388 P.3d 950, at *9 (quoting *Haddock v. State*, 146 P.3d 187 (2006)). Accordingly, Gaona waived this claim. *Id.* (relying on *Drach v. Bruce*, 136 P.3d 390 (2006) and Kansas Supreme Court Rule 183(c)(3)).

Gaona argues that the KCOA rule is not adequate because Kanas does not strictly or regularly follow it. *See Johnson v. Mississippi*, 486 U.S. 1981, 1987 (1988) (citation omitted) ("[A] state procedural ground is not 'adequate' unless the procedural rule is 'strictly or regularly followed.'"). He cites two cases, but they do not support his argument. Kansas Supreme Court Rule 183(c)(3) has an exception for a trial error affecting constitutional rights, provided exceptional circumstances excuse the failure to raise it on direct appeal. Gaona raised neither element of the exception before the KCOA.

Accordingly, the KCOA's ruling was based on an independent and adequate state ground that precludes federal habeas review unless Gaona demonstrates cause and prejudice or a

fundamental miscarriage of justice. *McCracken*, 268 F.3d at 976. Gaona alludes to ineffective assistance of his direct appeal counsel, but he did not raise the argument before the KCOA and is anticipatorily barred now. *See Frost*, 749 F.3d at 1231.  He also fails to produce reliable evidence to show actual innocence. Accordingly, the Court is precluded from reviewing this ground.

### K.     Cumulative Trial Errors

Gaona's twelfth ground asserts cumulative error, which consists of trial counsel's ineffective assistance and the prosecutorial misconduct outlined above. The KCOA found that the argument was barred by res judicata because Gaona raised cumulative error in his direct appeal. *Gaona*, 388 P.3d 950, at *9. Gaona did raise cumulative error in his direct appeal, but it was based on different underlying issues. *See Gaona*, 270 P.3d at 1182. Nevertheless, the KCOA addressed Gaona's cumulative ineffective assistance argument. *See* I, *supra*. The only other underlying error raised was prosecutorial misconduct, and Gaona waived that claim. Therefore, there is no additional layer of cumulative error to consider.

### L.     Additional Claims of Ineffective Assistance of Trial Counsel and Trial Error

Gaona's thirteenth through fifteenth grounds consist of additional claims of ineffective assistance of trial counsel, jury instructional error, and prosecutorial error, which he originally raised in his second state habeas petition. The Court is precluded from reviewing Gaona's claims because he procedurally defaulted them in state court, and he does not demonstrate cause and prejudice or a fundamental miscarriage of justice. *See McCracken*, 268 F.3d at 976.

Here, the KCOA found that Gaona's second state habeas petition was procedurally defaulted because it was untimely and Gaona did not demonstrate manifest injustice. *Gaona*, 437 P.3d 1034, at *3-4 (citing K.S.A. 2018 Supp. § 60-1507(f)). The KCOA also found that the petition was successive and that Gaona had not demonstrated exceptional circumstances. *Id.* (citing K.S.A.

2018 Supp. § 60-1507(c)). Gaona argued that his appellate counsel for his first state habeas petition was ineffective for failing to raise the arguments. The KCOA rejected the argument as demonstrating either manifest injustice or exceptional circumstances, reasoning that ineffective assistance did not satisfactorily explain why Gaona waited several years to assert his untimely claims.

For the same reason that the KCOA did not find manifest injustice or exceptional circumstances, the Court finds that Gaona's claim of ineffective assistance of appellate counsel does not demonstrate cause or prejudice. Gaona also fails to produce reliable evidence to establish actual innocence.[8]

## M.    Ineffective Assistance of State Post-Conviction Appellate Counsel

Gaona separately argues in his sixteenth ground that his appellate counsel for his first state habeas petition was ineffective for failing to raise ten claims. Gaona also raised this argument in his second state habeas petition. The KCOA found that it lacked subject matter jurisdiction because the claim was not ripe for review. *Gaona*, 437 P.3d 1034, at *2-3. It explained that the KSC had not yet ruled on his petition for review of his first state habeas petition, and Gaona still could have been granted relief. *Id.*

Rather than refiling his second state habeas petition after the KSC denied relief on his first, Gaona raised his claim in this Court. Therefore, Gaona's claim is unexhausted and dismissed. *See Frost*, 749 F.3d at 1231 (explaining that a federal court cannot grant a habeas petition unless the petitioner exhausted his claims in state court and referring to such unexhausted claims that would

---

[8] Even if the Court overlooked the procedural bar and considered the claims on the merits, the Court would not grant relief. On his ineffective assistance of counsel claims—most of which either involve failure to make baseless objections or tactical decisions—Gaona fails to show deficient performance, let alone prejudice. He also fails to direct the Court to federal precedent demonstrating that any prosecutorial misconduct and jury instruction error rendered the trial fundamentally unfair. *See Cuesta-Rodriguez*, 916 F.3d at 907; *Dockins*, 374 F.3d at 938-39.

be procedurally defaulted as an "anticipatory procedural bar").  And, although the Court may consider unexhausted claims in limited situations, Gaona fails to make the required showing because he has shown neither (1) cause for failing to properly raise the claim in state court and resulting prejudice nor (2) a fundamental miscarriage of justice based on a credible showing of actual innocence.[9] *See id.* (outlining standard).

### N.      Certificate of Appealability

 The rules governing 28 U.S.C. § 2254 petitions require a district court to issue or deny a certificate of appealability when entering an order adverse to the petitioner. *See* Rule 11, Rules Governing Section 2254 Cases in the United States District Courts. A district court will issue a certificate of appealability only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under this standard, the petitioner must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citation omitted). For the reasons stated above, the Court finds that Gaona has not made a substantial showing of the denial of a constitutional right and, therefore, declines to issue a certificate of appealability.

## IV.    CONCLUSION

 The Court carefully considered Gaona's 135-page petition and arguments. The Court finds that his claims do not merit relief.

 THE COURT THEREFORE ORDERS that Gaona's Petition for Writ of Habeas Corpus (Doc. 1) is DISMISSED IN PART and DENIED IN PART.

---

[9]     Even if the ground was exhausted, Gaona would not be entitled to relief. The ineffectiveness of counsel during federal or state collateral post-conviction proceedings is not a ground for relief under 28 U.S.C. § 2254. 28 U.S.C. § 2254(i).

THE COURT FURTHER ORDERS that a certificate of appealability is NOT ISSUED in this case.

IT IS SO ORDERED.

Dated: August 9, 2021                         /s/ *Holly L. Teeter*
                                              HOLLY L. TEETER
                                              UNITED STATES DISTRICT JUDGE